PROVIDENCE INSTITUTION FOR SAVINGS *vs.* LINCOLN
TRUST COMPANY *et al.*

APRIL 19, 1940.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J. This is a bill in equity to establish the complainant's alleged right to use a certain gangway in common with the respondents. It was heard in the superior court on amended bill, answer, replication and proof, whereupon the relief prayed for was granted and a decree accordingly was entered. The cause is before us on the single appeal from that decree by one of the respondents, New England Mutual Life Insurance Company.

The material facts are substantially undisputed. From 1902 to 1920 Butler Exchange Company was the owner of a tract of land bounding, in general, northerly on Westminster street and southerly on Weybosset street in the business section of Providence. For present purposes, these streets may be considered as running parallel, in a general easterly to westerly direction. On this tract were located three buildings, *viz.*, (a) the Butler Mansion, so-called, fronting in a general northerly direction on Westminster street; (b) the Lincoln Trust Company, so-called, fronting in a general southerly direction on Weybosset street; and (c) the one half of the Arcade building, hereinafter referred to as the easterly half thereof, extending from Westminster street to Weybosset street, just westerly of the Butler Mansion and Lincoln Trust Company. This tract also included two gangways as shown on a recorded plat.

The first or Weybosset street gangway, hereinafter called Weybosset gangway, was located between a part of the easterly side of the Arcade and the westerly side of the Lincoln Trust Company. It extended northerly from Weybosset street, with some angles around the Arcade ell, to the area or yard in the rear of the Butler Mansion. This gangway was, in general, about ten feet wide and is the only one involved in the present controversy.

The second or Westminster street gangway, hereinafter called Westminster gangway, was located between a part of the easterly side of the Arcade and the westerly side of the Butler Mansion. This extended, in general, southerly from Westminster street to the area or yard in the rear of the Butler Mansion, where it met and merged with the Weybosset gangway. The Westminster gangway is only about three and one half feet wide and is not involved in this appeal.

In 1920 the unified title to this tract was severed and the owner began to divide it into three separate parcels. By the

first deed, dated December 10, 1920, Butler Exchange Company conveyed to Weybosset Realty Company the premises herein referred to as the Lincoln Trust Company on Weybosset street, as described by metes and bounds. This conveyance included the fee to the easterly half of the Weybosset gangway, adjacent to the Lincoln Trust Company, "together with that right of way as appurtenant to said premises to pass and repass on foot with animals and vehicles" over the other or westerly half of the gangway, to which Butler Exchange Company retained title, "subject however to the payment by the grantee, its successors and assigns of one-half of the expense of the maintenance and repair of said gangway and sewer." This deed further provided: "This conveyance is made subject to the reservation to the grantor, its successors or assigns, owners for the time being of the adjoining premises of the full and free right at all times hereafter to use that portion of the premises hereby conveyed as is now included within the present lines of the said gangway . . . *as and for a gangway at all times and for all purposes connected with the use and occupation of the grantor's other land and premises adjoining* the premises hereby conveyed, and subject to the further right hereby reserved to the grantor, its successors and assigns as owner of the said adjoining premises to use for all time the sewer now laid and in use in said gangway; and subject further to all existing tenancies and leases and the terms and conditions of same . . . ." (italics ours) The respondent Lincoln Trust Company acquired these premises, together with all the benefits and burdens pertaining thereto, from Weybosset Realty Company by deed dated February 23, 1924.

By the second deed, executed May 2, 1921 (but erroneously dated May 2, 1920), Butler Exchange Company conveyed to Mumford's Restaurant, Incorporated, the premises herein referred to as the Butler Mansion on Westminster street, as described by metes and bounds, together with "*all* the *privileges and appurtenances* thereunto belonging"

(italics ours). This conveyance also included the fee to the easterly half of the Westminster gangway and the right to use, as a gangway, the westerly half thereof, to which the grantor reserved title to itself, its successors and assigns, subject to the payment by the grantee of one half of the expense of the maintenance and repair of the entire gangway and sewer. This deed did not mention specifically any right of way over the Weybosset gangway. The complainant, by mesne conveyances, obtained title to said Butler Mansion premises, together with all of the burdens and benefits pertaining thereto, by mortgagee's deed dated October 20, 1936.

By the third deed, dated June 12, 1922, Butler Exchange Company conveyed to Providence Arcade Corporation the easterly half of the Arcade building, extending from Weybosset street to Westminster street, "*subject* to all existing tenancies and also *to all agreements, rights and reservations* as contained in the deed from the within Grantor to the Weybosset Realty Company dated December 10th, 1920 and recorded in said Recorder of Deed's office in Book 601, at page 325, also to all agreements, rights and reservations as contained in the deed from the Grantor to Mumford's Restaurant, Incorporated dated May 2nd, 1920 and recorded in said Recorder of Deed's office in Book 611, at page 25 . . . , but together with all rights reserved to the Grantor in the said deeds to said Mumford's Restaurant, Incorporated and to said Weybosset Realty Company . . ." (italics ours) These Arcade premises, by mesne conveyances, were acquired by the respondent New England Mutual Life Insurance Company from George H. Empsall et ux., by deed dated June 26, 1935.

The descriptions in all three deeds were drawn by metes and bounds according to a detailed map which was specially made for the owner and was referred to in the deeds. This map, which showed the division of the tract

into three parcels and also the two gangways, was on record when the above deeds were recorded. Another plat, which likewise showed the Weybosset gangway, was also on record. Between 1908 and 1921 Mumford's Restaurant, Incorporated, was a tenant of the owner in the Butler Mansion and, as such, had continuously made extensive and almost daily use of the Weybosset gangway in connection with its use and occupation of Butler Mansion.

The Westminster gangway was then practically closed at its entrance by a stairway to the second floor of Butler Mansion; and it was not wide enough, in any event, for passing with animals or vehicles. The Weybosset gangway was the only practical means of access to the kitchen of Mumford's Restaurant without going through the restaurant proper. This use was apparently well known to the grantor and grantee of the Lincoln Trust Company premises. Mumford's Restaurant, Incorporated, first as tenant and then as owner of Butler Mansion, and later its successors, continued such use until at least March 1931. At all these times the Weybosset gangway had been laid out and actually used only as a gangway in varying degrees by all three owners of abutting premises.

The trial justice found substantially that Butler Exchange Company intended to keep both gangways open as a continuous one from Weybosset street to Westminster street for the use of the owners and tenants of all abutting premises conveyed by the three deeds above mentioned. He also found that the complainant, as owner of the Butler Mansion premises, was entitled to an easement, as appurtenant thereto, over the Lincoln Trust Company's one half of the Weybosset gangway and "by implication" over the other half owned by the respondent insurance company.

The respondent insurance company contends that the decision of the trial justice, being based on inferences from undisputed · evidence, comes to this court without the weight ordinarily accorded to a decision upon conflicting evidence. It concedes that such an easement may pass "by implication" upon the severance of an estate; but it contends that the conclusion of the trial justice, *viz.*, that there was an implied grant of such an easement over the portion of the Weybosset gangway now owned by the respondent, was not warranted by the law or evidence, because such an easement was not shown to be physically apparent, strictly necessary and continuous. In support of these and other related contentions, the respondent has submitted numerous cases and authorities.

In our opinion, however, we need not consider all of these contentions in detail or the numerous citations of law referring thereto because the instant cause is not strictly and entirely the usual type of easement by implied grant. It is agreed, however, by the parties that the intention of the grantor and grantee in the deed at the time of its execution and delivery is the test by which an implied grant of such an easement ordinarily is to be determined. It is not denied that complainant has all the rights, privileges and burdens belonging or pertaining to Butler Mansion, as they existed when the owner conveyed that property together with "all the privileges and appurtenances thereunto belonging" to its tenant, Mumford's Restaurant, Incorporated. Nor is it disputed that this respondent holds the easterly half of the Arcade premises subject to all the rights, privileges and burdens which were granted or placed upon it by reason of the owner's specific reservations referred to in its deed, namely, to the Providence Arcade Corporation, one of the respondent's predecessors in title.

In the case of implied grants of easements of way, the intention of the grantor and grantee generally must be

implied largely, if not solely, from evidence of the characteristics of the gangway and the circumstances surrounding its use. In the instant cause, however, the intention of the parties was expressed, although in general terms, in the deed to complainant's predecessor in title, Mumford's Restaurant, Incorporated. Thus it is necessary only to infer, under that general expression of intent, a more particular description by reference to the grantor's specific intent, as expressed in its previous deed to the Weybosset Realty Company.

It is true that the second deed, namely, to Mumford's Restaurant, Incorporated, one of complainant's predecessors in title, did not mention explicitly the Weybosset gangway or right of way therein. But the owner, Butler Exchange Company, divided this tract in accordance with a very definite scheme. This is apparent from the undisputed evidence, including the recorded map made specially for that purpose and referred to in all three deeds, by which the severance of title and division into three parcels were effected. Therefore, all deeds must be read together, in the light of the undisputed facts existing at the times of their execution and delivery, in order to ascertain the intention of the parties to the deeds with relation to the Weybosset gangway.

When so considered, it appears clearly that the owner's intention to keep the Weybosset gangway open for itself, and for succeeding owners of Butler Mansion and the Arcade, was specifically expressed in the first deed. Thus, in that deed conveying the Lincoln Trust Company premises, the owner definitely gave to this gangway certain legal characteristics and effect and reserved an easement therein in favor of the adjoining Butler Mansion and Arcade premises. Regardless of whether easements of way are usually considered "as appurtenant", this owner conveyed to the grantee in that first deed "as appurtenant"

to the premises therein conveyed, and in common with the owners, or their successors, of adjoining land, a right of way over the westerly half of the Weybosset gangway.

In the same deed, the owner specifically reserved to itself and to its successors and assigns, as owners of the adjoining Butler Mansion and Arcade premises, the "full and free right at all times hereafter to use that portion of the premises hereby conveyed . . . *as and for a gangway at all times* and *for all purposes connected with the use and occupation* of the grantors' *other land and premises adjoining* the premises hereby conveyed". (italics ours)

This expressed language makes the intention of the parties to that deed entirely clear, and there is no need to imply it merely from other evidence including the use of the gangway. However, the daily use of that gangway by Mumford's Restaurant, Incorporated, in connection with its tenancy in Butler Mansion, must be held on the undisputed evidence here to have been known to and intended by the parties to this first deed, and also by Mumford's Restaurant, Incorporated. Then the same owner conveyed to its *tenant*, Mumford's Restaurant, Incorporated, the Butler Mansion premises together with "all the privileges and appurtenances thereunto belonging". Certainly, under the owner's own language in the previous deed and under the other undisputed evidence of the actual use of the gangway by the tenant of Butler Mansion at the time, the right to use the Weybosset gangway, previously reserved so expressly for the benefit of the owner of the Butler Mansion, its successors and assigns, was either a privilege or an appurtenance, in connection with the known "use and occupation of the grantor's other land and premises adjoining".

In our opinion, this second conveyance carried with it the right to use the Weybosset gangway, in common with the owners of the Lincoln Trust Company and the Arcade, in

the same way that the "common owner" had used and reserved it. Such construction is further confirmed by the third deed of the owner, namely, to the Providence Arcade Corporation. The same essential provisions also appear in the conveyance of the Arcade premises to the respondent insurance company, namely, that the owner conveyed the easterly half of the Arcade building expressly "subject to all existing tenancies and also to all *agreements, rights* and *reservations*" made in the previous deeds to the Weybosset Realty Company and to Mumford's Restaurant, Incorporated. (italics ours) This shows an intention of the owner to carry out legally the rights it had expressly granted and reserved in those previous deeds with reference to the Weybosset gangway, as well as to have all three deeds read together in determining the intention of the parties to the deeds at the time of their delivery.

From a consideration and construction of these three deeds, in the light of the undisputed facts existing at the time of their delivery, we are of the opinion that an easement over the Weybosset gangway, as a privilege or appurtenance to the use and occupation of the Butler Mansion premises, was intended and was expressed in substance by the parties to those deeds. In that aspect the easement is by implied grant only to the extent that it is implied from the particular grants and reservations expressed in the owner's first deed and their express general conveyance in the second deed to one of complainant's predecessors in title.

The respondent contends that this is negatived to some extent by the failure to provide for a sharing of the cost of maintenance and repair of the gangway. The complainant, however, points out that there is no evidence that any expense has been incurred for such purpose; and further, in its brief, takes the frank position that the complainant would not expect to have the benefits of such an easement with-

out also sharing the expense, if and when there is any, in connection with the easement which was found in its favor.

For the reasons stated, the appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Russell P. Jones, Westcote H. Chesebrough, Tillinghast, Collins & Tanner,* for complainant.

*Elmer E. Tufts, Jr., Ronald B. Smith, Edwards & Angell,* for New England Mutual Life Insurance Company.